UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.                                                                  Cr. No. 05-10159 PBS

ANTONIO FERREIRA

## DEFENDANT'S SENTENCING MEMORANDUM

Now comes the defendant, Antonio Ferreira, and submits this Memorandum of Fact and Law for the Court's consideration at his sentencing.

## FACTUAL BACKGROUND

Mr. Ferreira is a Brazilian National who came to the United States legally in 1994. He got married to his current wife in 1981, when he was 18, and they had a daughter shortly afterward. While his family entered the United States legally, they overstayed their visas.

Mr. Ferreira has a large number of family members who remain in Brazil, and he has stipulated to deportation after he serves the sentence imposed by this Court. Mr. Ferreira maintains that his wife and daughter have already been deported, and are currently in Brazil. While he keeps in touch with them by letter, his family has had difficulty adjusting to being without him.

Mr. Ferreira has no history of criminal behavior aside from the current offense.

## ARGUMENT

1. <u>Mr. Ferreira should be accountable for less than 100 documents, and therefore his Total Offense Level should be 14</u>.

Probation and the Government both submit that Mr. Ferreira should be accountable for

greater than 100 documents in this case, but both calculations include 67 documents that should not be attributed to Mr. Ferreira as part of the relevant offense conduct in this matter.

Paragraph 22 of the Probation report sets out an incident from May of 2001. During that time, Mr. Ferreira's wife was arrested for possession of 67 documents, 32 blank social security cards and 35 blank Brazilian International Drivers' Licenses. The United States Customs service had intercepted these documents, and made a controlled delivery to Mr. Ferreira's wife, who was then arrested. Mr. Ferreira was not arrested for these documents, and was not deported for the possession of them. The government attempted to make a controlled delivery to "Antony Cabreira"[1] and actually delivered them to Mr. Ferreira's wife, after which they arrested her and deported her for the conduct.

The government investigation began around June 17, 2004, according to the government's statement of the offense. See PSR at 13. The 67 documents that the government and probation are seeking to hold Mr. Ferreira accountable for were seized by the government on or about May 22, 2001, more than three years prior to the investigation. Moreover, the government made a controlled delivery of the documents to his wife in 2001, and arrested her for their possession. Those documents were in the possession of the government from that time forward, and have no relation whatsoever to the current offense conduct. Generally, for the events to be part of a common course of conduct they must be connected closely in time or similarity, and in this case, the 67 documents are neither. Not only are they distant temporally from the charged offenses, but Mr. Ferreira was never in possession of the prior documents, and his wife was arrested and deported for their possession. See PSR ¶ 22.

---

[1] The government alleges that this is an alias of Mr. Ferreira. The defendant disputes that the intercepted Federal Express Package was intended to be delivered to him.

As a result, these 67 documents should not be counted toward the total amount of documents possessed by Mr. Ferreira. Therefore, adopting the remainder of Probation's calculations[2], Mr. Ferreira is accountable for between 25 and 99 documents, and should have a total offense level of 14, rather than the 17 calculated by Probation.

2.  This Court must weigh the factors in 18 U.S.C. § 3553(a) to craft a proper sentence for Mr. Ferreira, and is not bound to sentence him within the advisory Sentencing Guideline range.

After the decision in United States v. Booker, 125 S. Ct. 738 (2005), the Sentencing Guidelines are no longer binding upon a sentencing court. If the sentencing court treats the Guidelines as mandatory, including as far as enhancements for the number of documents, the sentence would be unconstitutional under Booker. Id.

Under 18 U.S.C. §3553(a) (hereinafter §3553(a)), a series of different factors must be considered so that the sentencing court imposes a sentence that is "sufficient but not greater than necessary to comply with the purposes [of sentencing]." In this case, the calculated sentencing guideline range is incompatible with the goals of sentencing as set forth in § 3553(a), and therefore this court should apply the § 3553(a) factors to arrive at an appropriate sentence.

The holding of Booker was, in essence, that the Sentencing Guidelines were only one factor to be considered by a court when sentencing a defendant. The court now has the discretion to craft any sentence which is reasonable, taking into account all the statutory factors set out in §

---

[2] In paragraph 59 of the presentence report, the probation department determines that the offense involved 115 documents. The defendant takes issue with the inclusion of the 32 blank social security cards and the 35 Brazilian International Drivers' Licenses as being beyond the scope of relevant conduct. Therefore, the defendant proposes that the Court find him accountable for 115-67, or a total of 48 documents (or "sets" of documents).

3553(a). There are a total of seven factors under § 3553(a) which are to be considered and weighed by a sentencing court.[3] The defendant shall address each in turn:

*1. The nature and circumstances of the offense and the history and characteristics of the defendant*:

The defendant in this case is uneducated and an illegal immigrant from Brazil. He cares deeply for his family, and has a minimal criminal history. He was not involved in large scale document forgery, and provided relatively small numbers of documents to other aliens seeking to get drivers' licenses in the United States. He did not (despite his boasts to the various C I s in the case) make a large amount of money in this enterprise. The scheme did not involve a large geographical area or violence in any way.

Furthermore, at this point the great majority of his family network is in Brazil. His wife and child have been deported, and most of his brothers and sisters live in Brazil. Upon his release from prison, he will permanently return to Brazil.

*2. Then need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide the defendant with needed services*:

The goals of this prong of 3553(a) are not well served by a prison sentence within the Guideline Range for a few reasons. Firstly, the forged documents were merely being used to secure drivers' licenses for aliens, and not for other types of fraud or dangerous criminal activity. Secondly, the defendant has filed a voluntary stipulation of deportation, so deterrence and public protection are less relevant where he will be sent to Brazil, and will no longer be in this Country where the public would need protection. Thirdly, the defendant in this case, unlike in many other

---

[3] Although there are seven enumerated factors, § 3553(a)(4) and § 3553(a)(5) both pertain to the Sentencing Guidelines, the former to the actual guideline range and punishments and the latter to the policy statements contained in the Guidelines.

criminal cases, is not a drug addict and has no serious mental illnesses. Therefore, the services which may be provided to the defendant within the prison are minimal.

   *3. The kinds of sentences available*:

Certainly this court has a variety of sentencing options at its disposal, ranging from probation or a fine to lengthy imprisonment with a long period of supervised release. However, in this case, the defendant has agreed to a stipulated order of deportation which reduces the cost to the courts of a deportation hearing after his release, and will also reduce the costs of additional incarceration. It would be appropriate to take into account the resources of the court and of the government, and therefore sentence Mr. Ferreira to a lesser term of imprisonment so that he will be released and deported earlier rather than later so as to save resources of the courts and of the Bureau of Prisons.

   *4 and 5.   The Guideline Range and policy statements*:

The Guidelines, after <u>Booker</u>, are advisory to the court and two of the seven factors to be considered at sentencing. The defendant, as an initial matter, disagrees with the probation department's (and the government's) calculation of the appropriate offense level, as argued elsewhere in this memorandum.

Regardless of the final guideline calculation however, the guideline imprisonment range is only one of the seven factors to be considered in sentencing. Here, the court must determine whether the guideline imprisonment range is appropriate in light of the other § 3553(a) factors, and particularly the need for the sentence to be no "greater than necessary" to accomplish the goals of sentencing.

   *6. The need to avoid unwarranted sentence disparity*:

The defendant notes that his sentence will not be "disparate" from others sentenced

pursuant to this statute largely due to his pending deportation. Even were his prison sentence to be somewhat shorter than another person's, he will be further "punished" by being removed from this country, where he has lived for the last eleven years, such that he may not return. This significantly "worsens" the sentence for Mr. Ferreira regardless of the term of imprisonment imposed by the court.

7. *The need to provide restitution*: In this case, there is "no identifiable victim," so this factor is inapplicable.

## CONCLUSION

For the foregoing reasons, the court should sentence Mr. Ferreira to a minimal term of imprisonment, and enter his stipulated order of deportation. The defendant requests that this Court determine that he is accountable for less than 100 documents, and that the properly calculated Total Offense Level is 14 (with a criminal history category of one).[4] The defendant further requests that this Court determine that a sentence of time served or 12 months imprisonment adequately accounts for the factors set forth in § 3553(a), and achieves the goals of sentencing.

Respectfully Submitted

/s/ MELVIN NORRIS
Melvin Norris
260 Boston Post Rd. Suite 9
Wayland, MA. 01778
Tel. 508 358 3305
BBO # 373900

October 17, 2005

---

[4] The guideline imprisonment range for a level 14, criminal history category I is 15-21 months.